**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------X
In re:                                                          Chapter 11

Cloudeeva, Inc.,                                                Bankruptcy Case No. 14-24874
                                                                (Jointly Administered)
                Debtor.
---------------------------------------------------------------X

APPEARANCES:

Trenk, DiPasquale, et al.
347 Mt. Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
Richard D. Trenk, Esquire
Sam Della Fera, Esquire
Shoshana Schiff, Esquire
Counsel for Debtors                                              **MEMORANDUM OPINION**

Brown Rudnick LLP
7 Times Square
New York, New York 10036
Daniel J. Saval, Esquire (admitted *pro hac vice*)
Mason C. Simpson, Esquire (admitted *pro hac vice*)
Shoshana B. Kaiser, Esquire (admitted *pro hac vice*)
Hunter Smith, Esquire
Counsel for Bartronics Asia Pts. Ltd.

Fox Rothschild LLP
75 Eisenhower Parkway, Suite 200
Roseland, New Jersey 07068
Richard M. Meth, Esquire
Local Counsel for Bartronics Asia Pts. Ltd.

**HONORABLE KATHRYN C. FERGUSON, USBJ**

Procedural History

On July 21, 2014, Adesh Tyagi[1] filed a voluntary Chapter 11 bankruptcy petition for Cloudeeva, Inc., a Delaware corporation. On the same date, Mr. Tyagi also filed for Cloudeeva, Inc., a Florida corporation; the two cases have been administratively consolidated. The bankruptcy petitions did not include any of the required schedules or statements. The Debtors sought a 45 day extension of time to file the missing documents.[2] When the schedules and statements were filed, the Debtors sought to have portions of them filed under seal.

On August 4, 2014, Bartronics Asia Pte. Ltd. ("BAPL") filed a motion seeking entry of an order directing the appointment of a Chapter 11 trustee or, in the alternative, dismissing the Chapter 11 cases. The motion was scheduled for August 22, 2014. On the return date, the court took oral argument from the parties. Following oral argument, and based solely on certifications filed by the Debtors, the court granted the portion of the motion seeking dismissal, and read an opinion into the record. An order dismissing the case was entered the same day.

On August 29, the Debtors filed a Notice of Appeal of the dismissal order. On September 5, the Debtors filed a "Motion pursuant to Federal Rule of Bankruptcy Procedure 8005 for a stay pending appeal of the order dismissing Chapter 11 cases." The bankruptcy court scheduled a hearing on the motion for stay pending appeal for September 16th. The Debtors then filed in the District Court an "Emergency Motion of Cloudeeva, Inc. pursuant to Fed. R. Bankr. P. 8005 and 8011(a) for a stay pending appeal of the Bankruptcy Court order dismissing Chapter 11 cases" claiming, among other things, that the cash position of the Debtors was so poor that it would be unable to make payroll on September 15th. On September 10, Judge Pisano entered an "Order

---

[1] Mr. Tyagi signed the bankruptcy petition listing himself as Chief Executive Officer.
[2] The court denied the request for a 45 day extension, and entered an order requiring the schedules and statements to be filed by August 20, 2014.

2

Granting a Stay of the Bankruptcy Court Order Dismissing Chapter 11 Cases and Scheduling Status Conference." The Order scheduled a status conference before Judge Pisano on September 19th and ordered "that the Dismissal Order shall be stayed pending further proceedings before this Court" and "that the Cases are reinstated in the Bankruptcy Court." On September 23, Judge Pisano entered an order providing that "the Bankruptcy Court's August 22, 2014, Dismissal Order is hereby VACATED" and that the "matter is remanded to the Bankruptcy Court for proceedings consistent with this Court's Order."

After a status conference held before Judge Ferguson on September 23, the bankruptcy court relisted the motion to dismiss and scheduled the matter for an evidentiary hearing. The parties presented evidence on the motion to dismiss[3] on October 17, 23, 24, and 29. The court reserved decision.

## Background

Cloudeeva Delaware is a global cloud services and technology solutions company.[4] The company provides information technology staffing services to clients and third party vendors in the United States and India. The company's back office services are provided by a company called Cloudeeva India, owned by Mr. Tyagi's parents.[5] Cloudeeva Delaware employs over 300 W-2 employees and some independent contractors.

Cloudeeva Florida is a holding company that owns 100% of the equity of Cloudeeva Delaware. The entity currently known as Cloudeeva Delaware resulted from a December 2012

---

[3] BAPL withdrew the portion of its motion that sought the appointment of a Chapter 11 trustee.
[4] Ex. B-2 (Declaration of Adesh Tyagi in Support of Chapter 11 Petitions and First Day Pleadings)
[5] Mr. Tyagi testified that he served as the director of Cloudeeva India from approximately February through March 2014.

stock exchange agreement between Systems America, Inc.[6] and BAPL. As a result of that stock exchange agreement, BAPL became a 62% shareholder of Cloudeeva Florida making BAPL the majority shareholder of the Debtors. That corporate marriage has resulted in significant litigation in the New Jersey and California state courts, including, a complaint filed by BAPL on September 12, 2013, in Superior Court in Santa Clara, California seeking, *inter alia.*, "rescission of the Stock Exchange Agreement and Stockholders' Agreement" and for "restitution of all monies paid."[7] The Debtors filed a cross-complaint alleging, *inter alia.,* fraud and breach of fiduciary duty.[8] In the California litigation, Judge Stoelker entered an order on July 7 scheduling a hearing for July 22, 2014, on BAPL's renewed[9] motion for the appointment of a receiver. Mr. Tyagi filed the bankruptcy petitions the day before the hearing on the receiver motion, and shortly before the matter was scheduled for a JAMS arbitration in August.

## Discussion

Dismissal of a chapter 11 case is governed by § 1112 of the Bankruptcy Code. Section 1112(b) was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[10] to make it more difficult to defeat a request for conversion or

---

[6] The predecessor to Cloudeeva Florida
[7] Ex. B-42
[8] Ex. B-43. On September 19, 2013, the Debtors filed a nearly identical complaint in the Superior Court in Mercer County, New Jersey. [Ex. B-51] BAPL had also filed a lawsuit against Mr. Tyagi and the Debtors in New Jersey, but withdrew it.
[9] In March 2014, a motion by BAPL for the appointment of a receiver was denied by Judge Stoelker in favor of regular reporting by Cloudeeva to BAPL. Judge Stoelker had hoped that through regular reporting BAPL "could be assured that no misadventure (or worse) had befallen the company assets." [Ex. B-87] But in a May 13, 2014 order resolving a motion to compel compliance with court orders, Judge Stoelker stated that "Cloudeeva consistently has avoided as much of its reporting responsibilities as possible" and the court noted its frustration that "its orders are stretched, summarily revised, or ignored by Cloudeeva."
[10] BAPCPA's amendments to § 1112(b) have been generously described as "linguistically difficult." COLLIER ON BANKRUPTCY, ¶ 1112.05[2], 1112–44.

dismissal.[11] The previous version of § 1112(b) provided that the court "may" dismiss or convert a case for cause; the statute now provides that a court "shall" dismiss or convert a case on a showing of cause.[12] The language of § 1112(b) was amended again in 2010[13] and the section currently provides that:

> the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.[14]

The 2010 amendment[15] clarified that a court can decline to dismiss or convert a case if "the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."[16]

The statute provides a non-exclusive list of possible causes for conversion or dismissal.[17] Once a showing of cause has been made, a debtor can avoid mandatory conversion or dismissal only if the debtor can establish that the requirements of § 1112(b)(2) are satisfied. Section 1112(b)(2) provides that:

---

[11] Hon. William H. Brown & Lawrence R. Ahern III, 2005 BANKRUPTCY REFORM LEGISLATION WITH ANALYSIS at 89 (2005)

[12] *See*, In re Products Intern. Co., 395 B.R. 101, 108 (Bankr. D. Ariz. 2008) ("Section 1112(b), as amended, provides that once cause has been shown, the Court's discretion is limited"); In re The SCO Group, Inc., 2009 WL 2425755 (Bankr. D. Del. 2009) ("Congress clearly intended to make conversion or dismissal mandatory upon proof of cause.")

[13] Bankruptcy Technical Corrections Act of 2010, Pub. L. 111-327, 124 Stat. 3557 (Dec. 22, 2010)

[14] 11 U.S.C. § 1112(b)(1)

[15] The 2010 amendment to § 1112(b)(2) imported some of the language of the now deleted § 1104(a)(3), which had been added as part of BAPCPA in 2005.

[16] In re Dr. R.C. Samanta Roy Institute of Science and Technology, Inc., 465 Fed. Appx. 93 (3d Cir. 2011) ("Absent unusual circumstance, 11 U.S.C. § 1112 provides that, once cause is established, a bankruptcy court shall convert a case to Chapter 7 or dismiss the case 'unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of the creditors and the estate.' 11 U.S.C. § 1112(b)(1).")

[17] *See*, 11 U.S.C. § 1112(b)(4)

5

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>> (A) there is a reasonable likelihood that a plan will be confirmed within … a reasonable period of time[18]

Although lack of good faith is not one of the causes for dismissal listed in § 1112, since its decision in In re SGL Carbon Corp. the Third Circuit Court of Appeals has joined the majority of circuits in holding that § 1112 allows a chapter 11 to be dismissed if it was not filed in good faith.[19] Even after BAPCA, the Third Circuit Court of Appeals has found that lack of good faith remains a valid ground for dismissal of a Chapter 11 case. In In re 15375 Memorial Corp. v. Bepco, L.P.,[20] the court held that:

> Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith and the burden is on the bankruptcy petitioner to establish [good faith]. Whether the good faith requirement has been satisfied is a fact intensive inquiry in which the court must examine the totality of facts and circumstances and determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.[21]

There are few, if any, black and white rules in a good faith determination, but the Third Circuit Court of Appeals has noted that the Bankruptcy Code does not "allow for the filing of a bankruptcy petition that lacks a valid reorganizational purpose."[22] Once the movant establishes

---

[18] 11 U.S.C. § 1112(b)(2)
[19] *See, e.g.,* In re Integrated Telecom Express, Inc., 384 F.3d 108 (3d Cir. 2004); In re SGL Carbon Corp., 200 F.3d 154 (3d Cir. 1999)
[20] 589 F.3d 605 (3d Cir. 2009)
[21] 15375 Memorial Corp. at 618
[22] In re SGL Carbon Corp., 200 F.3d 154, 163 (3d Cir. 1999)

that there is an issue regarding good faith, the debtor bears the burden of proving that a petition was filed in good faith.[23]

BAPL's presentation of evidence

As the movant, BAPL had the burden of going forward on the issue of good faith. The first witness BAPL presented was Adesh Tyagi, the chief executive officer of the Debtors. Mr. Tyagi was not a credible witness. From the outset of Mr. Tyagi's testimony, he presented as disingenuous and evasive. In the initial exchange with BAPL's counsel, Mr. Tyagi claimed that he did not know whom Mr. Saval represented.[24] Given the history of these bankruptcy filings, that position is wholly lacking in credibility. Mr. Tyagi then equivocated about whether he was aware of the pending arbitration hearing with BAPL at the time he filed the bankruptcy petitions. When pressed, Mr. Tyagi conceded that he was aware that the arbitration hearing had been scheduled for August when the petitions were filed.[25] Mr. Tyagi claimed that he had sought bankruptcy counsel in June, prior to BAPL filing its motion in California to appoint a receiver for Cloudeeva Delaware. Yet, he was unable able to recall the names of any New Jersey firms he consulted with before hiring Lowenstein Sandler as his bankruptcy counsel.[26] BAPL's counsel questioned Mr. Tyagi about the fact that he listed housing and transportation expenses that were paid by the company as his personal expenses on his income and expenses declaration in his matrimonial case. Mr. Tyagi's answers regarding that were less than forthcoming, and his

---

[23] In re Marshall, 721 F.3d 1032 (9th Cir. 2013); In re SGL Carbon Corp., 200 F.3d at 162 n. 10. The quantum of proof is preponderance of the evidence. In re Erkins, 253 B.R. 470, 474 (Bankr. D. Idaho 2000).
[24] Transcript of October 17, 2014 hearing at 13
[25] Transcript of October 17, 2014 hearing at 14 - 16
[26] Ex. B-1 (Lowenstein engagement letter). The engagement letter was signed by Mr. Tyagi on July 16, 2014, five days before the bankruptcy petitions were filed.

7

attempts to justify his classification of the expenses as personal were unavailing.[27] Mr. Tyagi exhibited similar cunning when testifying as to how he reported his monthly income in his matrimonial case.[28] Mr. Tyagi's caginess did not abate even when being questioned by his own counsel on cross-examination. Mr. Tyagi's claimed lack of knowledge of certain matters stands in stark contrast to his detailed knowledge of similar matters. Overall, Mr. Tyagi's demeanor and wariness severely undercut his credibility.

Fortunately for the Debtors, courts have found that a debtor's subjective intent is not determinative in a good faith analysis. As explained by the Ninth Circuit Court of Appeals:

> The term "good faith" is somewhat misleading. Though it suggests that the debtor's subjective intent is determinative, this is not the case. Instead, the "good faith" filing requirement encompasses several, distinct equitable limitations that courts have placed on Chapter 11 filings. [] Courts have implied such limitations to deter filings that seek to achieve objectives outside the legitimate scope of the bankruptcy laws.[29]

Mr. Tyagi's testimony called into doubt his good faith in filing these chapter 11 cases, but the court must base its determination on the totality of the evidence presented, not merely the subjective intent of Mr. Tyagi.

BAPL also presented other evidence, including the testimony of Elizabeth Pappy and Doug Kinehr. Mr. Kinehr, in-house counsel for Cloudeeva, testified that the company was subpoenaed by the SEC, but he could not say for certain that Cloudeeva is under investigation by the SEC for fraud.

---

[27] Transcript of October 17, 2014 hearing at 123; 127

[28] Transcript of October 17, 2014 hearing at 131 – 32. On cross-examination, Debtors' counsel elicited testimony from Mr. Tyagi that he provided a copy of his employment agreement to his wife's counsel. The fact remains that Mr. Tyagi presented the matrimonial court with the claim that he paid certain expenses, but did not disclose that he was reimbursed for those expenses when reporting his income.

[29] In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994)

At the conclusion of BAPL's case in chief, Debtors' counsel asked the court to rule in its favor and deny the request to dismiss the chapter 11 cases. The court denied the motion based on its finding that BAPL had absolutely met its burden of going forward on the issue of good faith. The burden then shifted to the Debtors to establish that the chapter 11 petitions were filed in good faith.

Debtors' presentation of evidence

Debtors' counsel asked the court to bear in mind that preserving jobs is a legitimate purpose of Chapter 11[30] and that there are 300 families that are dependent on these Debtors for their income.[31] The Debtors argued that there multiple factors informing the filing including a liquidity crunch, the need for the automatic stay, to preserve assets, and to address leases and contracts

The Debtors presented the testimony of Rajiv Sharma, Karen Balmer, and Scott Hammel. Mr. Sharma has worked for Cloudeeva as a controller since November 2013. Mr. Sharma testified about a levy on Cloudeeva's bank accounts,[32] and the financial impact of the lockout in India of the back office employees. He testified that there was no line of credit or traditional financing sources so the company was facing a liquidity crisis. Mr. Sharma testified that he was receiving frequent calls from creditors.  Ms. Balmer and Mr. Hammel, both in-house counsel, painted a picture of the Debtors as being beset by actual or threatened litigation on many fronts. Although much of this evidence had not been previously presented, or even mentioned, Debtors' counsel did a masterful job of reminding the court that timing is not the only issue pertinent to a

---

[30] *See, e.g.,* Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. Partnership, 526 U.S. 434 (1999) (one of the recognized policies underlying chapter 11 is to preserve going concerns)
[31] Transcript of October 29, 2014 hearing at 41 - 43
[32] Ex. B324 – 326. Notably, no mention of a levy was made at the initial hearing on the motion to dismiss.

9

good faith determination. It is true that a debtor should not be required to wait until the last minute to file for bankruptcy.[33] Debtors' counsel also argued that almost any date that Cloudeeva picked to file for bankruptcy BAPL could argue was suspect because the litigation was pending in California.

When this court issued it August 22nd opinion dismissing these chapter 11 cases, it found "both that the Cloudeeva petitions were filed to obtain a tactical litigation advantage and that the cases serve no valid bankruptcy purpose." The existence of good faith depends on an amalgam of factors and not on a specific fact. So while this court remains highly suspicious of the timing of this filing as suggestive of forum shopping, the additional evidence presented (that is, not previously presented by the Debtors) demonstrates that there were additional pressures on the Debtors. Those pressures, when considered collectively, establish a legitimate bankruptcy purpose for the filing. The Third Circuit has noted that "filing a Chapter 11 petition merely to obtain tactical litigation advantages in not within 'the legitimate scope of the bankruptcy laws'"[34] Here, the court finds that the bankruptcy petitions were not filed solely to obtain a tactical litigation advantage.

After the comprehensive presentation of evidence made by both sides, the court concludes that although obtaining a litigation advantage was one of the motivating factors for the filings, that there were other considerations and on the whole those other considerations edge these filings from the abusive end of the good faith spectrum to the acceptable end. The court is of the opinion that this case is dissimilar to cases that the Third Circuit has dismissed as a bad

---

[33] SGL at 163 ("It is also clear that the drafters of the Bankruptcy Code understood the need for early access to bankruptcy relief to allow a debtor to rehabilitate its business before it is faced with a hopeless situation.")

[34] SGL Carbon, 200 F.3d at 165 (quoting In re Marsch, 36 F.3d at 828)

faith filing. For example, in In re Integrated Telecom Express, Inc.,[35] the court was persuaded that the filing was in bad faith based on the fact that the debtor was solvent, the company did not intend to continue to operate, and there was no reasonable expectation that the chapter 11 proceeding would maximize the value for creditors. Here, there is an operating debtor that intends to continue to operate, and parties on both sides that appear to want to maximize the value of the companies. But while the court finds that mandatory dismissal is not warranted on the current record, the court is still gravely concerned about permitting Mr. Tyagi to continue in control of these Debtors.

Appointment of a trustee under § 1112(b)

Section 1112(b)(2) permits a court to decline to dismiss or convert a case if "the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."[36] The court finds that the appointment of a trustee in this case is unequivocally in the best interests of creditors and the estate. BAPL withdrew its request for the appointment of a chapter 11 trustee, but under the language of the statute, that option remains open to courts even without a separate request by a party in interest.[37] As Debtors' counsel established, there are several bodies of creditors to consider – from the claims of former employees to the claims of taxing authorities – and it should not matter if they are not actively participating in the case.

---

[35] 384 F.3d 108 (3d Cir. 2004)
[36] In re Dr. R.C. Samanta Roy Institute of Science and Technology, Inc., 465 Fed. Appx. 93 (3d Cir. 2011) ("Absent unusual circumstance, 11 U.S.C. § 1112 provides that, once cause is established, a bankruptcy court shall convert a case to Chapter 7 or dismiss the case 'unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of the creditors and the estate.' 11 U.S.C. § 1112(b)(1).")
[37] See, 11 U.S.C. § 105(a) "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action …."

Even if the court were proceeding under § 1104, there is authority for the court to proceed *sua sponte*.[38] Moreover, court have found that a full evidentiary hearing is not always required, as courts "enjoy wide discretion under § 1104(a)(2) to appoint a trustee".[39] Section 1104 provides that the appointment of a trustee may be made only "after notice and a hearing," and that phrase is defined in the Bankruptcy Code as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."[40] In this case, where the court has such serious concerns about the fitness of current management and the possibility of *sua sponte* appointment of a trustee has been mentioned even by Debtors' counsel, the court believes that issuing an order to show cause and having additional hearings after the four days the court has already had would run counter to the interests of the creditors of the estate. When unauthorized payments are being made to foreign companies the court believes that time is of the essence in appointing an independent fiduciary. It has been noted that the "notice standard is flexible and depends, in part, on the egregiousness of the cause motivating the appointment."[41] Here, the court finds that egregious facts support the appointment of a chapter 11 trustee. The court also notes that the Debtors could not be surprised that the court would consider appointment of a trustee. BAPL's original motion sought the appointment of trustee as an alternative form of relief. When remanding the case for a full evidentiary hearing, Judge Pisano told the Debtors "I am, therefore, remanding the case to the bankruptcy court for further proceedings consistent with what I've determined, including, I might add what is effectively the resuscitation of this motion for a trustee, which I think Judge

---

[38] Allen v. King, 461 B.R. 709 (D. Mass. 2011)
[39] In re Basil Street Partners, LLC, 477 B.R. 856 (Bankr. M.D. Fla. 2012)
[40] 11 U.S.C. § 102(1)(A)
[41] Allen v. King, 461 B.R. 709 (D. Mass. 2011)

Ferguson would have the ability to entertain in the event facts supported that kind of application."[42]

There are few cases that address the standard of proof for the appointment of a chapter 11 trustee under § 1112(b)(2) after the 2010 amendments. It is unclear if the court should apply the standards of § 1104, or simply make a determination of what is in the best interest of creditors and the estate. Even less insight is provided on the quantum of proof, since many courts require the appointment of a chapter 11 trustee to be based on clear and convincing evidence.[43] At any rate, the debate is immaterial because the court finds that the appointment of a trustee in these cases is warranted under either standard.

The facts supporting the appointment of a trustee in this case include: Mr. Tyagi's decision to pay himself a substantial bonus when he was claiming before this court and the District Court that the company was experiencing a liquidity crisis; the animosity and distrust between BAPL, the majority shareholder, and current management; and the unauthorized payments made to Cloudeeva India. Those specific facts combined with Mr. Tyagi's demeanor at the hearing on the motion to dismiss, paint a clear picture of corporate management that is not capable of fulfilling its fiduciary duties to creditors of this estate.

Mr. Tyagi demonstrated utter disregard for the best interest of the estate when he unilaterally determined to pay himself a $550,000 performance bonus after the bankruptcy filings. Mr. Tyagi's Employment Agreement[44] dated December 7, 2012, provided for him to receive an annual base salary of $450,000, plus payment of a "[h]ousing allowance" and an automobile. In addition, Mr. Tyagi was eligible for an annual performance bonus of "up to"

---

[42] Transcript of September 19, 2014 hearing before Judge Pisano at 46.
[43] *See, e.g.*, In re Marvel Entertainment Group, Inc., 140 F.3d 463 (3d Cir. 1998) (citing Sharon Steel Corp. v. DWG Corp, 871 F.2d 1217 (3d Cir. 1989))
[44] Ex. B-13 (Exhibit 26 to Declaration of Adesh Tyagi)

$550,000.[45] Mr. Tyagi would be eligible for the performance bonuses "upon achievement of the goals established by the Board of Directors".[46] The Agreement set forth specific goals for 2013, and provided that the "Board shall establish Performance Bonus milestones and targets for fiscal 2014 and 2015 before the end of the preceding fiscal year …."[47] No testimony was presented on whether Mr. Tyagi, as the sole member of the Board of Directors, actually established performance bonus milestones for himself for 2014. But, it is difficult to imagine that in a year when the companies filed for Chapter 11; expensive factoring arrangements were needed to meet ordinary payroll expenses; and the SEC suspended trading of Cloudeevas' securities[48] that Mr. Tyagi would qualify for a performance bonus. A debtor in possession is required to act as a fiduciary for creditors[49] and actions such as authorizing a large performance bonus when the company is factoring to meet payroll obligations[50] flies in the face of that duty to creditors.[51] A chapter 11 trustee is needed to investigate that payment and any other executive bonuses that may have been paid.

---

[45] The Employment Agreement provides that "the total target Performance Bonus of up to $550,000 per year shall not be reduced during the Initial Term without the Employee's prior written consent." The Initial Term is defined as 12/7/12 – 12/7/15, but the use of the phrase "up to" and the requirement of milestones and targets indicate that the bonuses were not intended to be a guaranteed part of Mr. Tyagi's compensation.

[46] Ex. B-13 (Exhibit 26 to Declaration of Adesh Tyagi) at ¶ 4(b)

[47] Id.

[48] Ex. D-327

[49] Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985) ("Indeed, the willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'")

[50] Ex. B-2 (Declaration of Adesh Tyagi in support of Chapter 11 Petitions and First Day Pleadings) at 7

[51] The testimony was unclear as to the precise date when Mr. Tyagi was paid the bonus. Even if it was paid during the period when these chapter 11 cases were dismissed, the court finds that it is relevant to its decision to appoint a chapter 11 trustee.

On the second issue, Mr. Tyagi himself admitted that the litigation with BAPL was causing problems for the companies.[52] Debtors' former bankruptcy counsel, Lowenstein Sandler, at the hearing on first day matters described these chapter 11 cases as a difficult shareholder dispute. The Third Circuit has upheld the appointment of a chapter 11 trustee where there was "deep-seeded conflict and animosity" between the parties[53] or based on "the contentious and acrimonious nature of the relationships among the parties."[54] The record in this case is replete with evidence of such an acrimonious relationship between BAPL and current management of the Debtors. There are allegations of self-dealing and fraud by both sides.

On the third issue, this court has already expressed its grave concern about Mr. Tyagi's lack of judgment regarding payments to Cloudeeva India. The court has already documented that Mr. Tyagi failed to reveal to the court his and his parents connections to Cloudeeva India, the "foreign vendors" the Debtors were seeking to pay outside the ordinary course of the bankruptcy proceeding. At the October 14, 2014, hearing on the Debtors' Motion for Authority to Pay Pre-Petition Claims of Certain Foreign Vendors[55] the court voiced its concern that the Debtors and their former counsel blatantly failed to disclosure to the court that there were not multiple foreign vendors as stated in the motion, but rather a single foreign vendor, and that sole vendor the Debtors sought to pay was Cloudeeva India, an entity owned by Mr. Tyagi's parents that he formerly operated. The payment of prepetition claims runs contrary to the normal operation of

---

[52] Ex. B-2
[53] In re Marvel Entertainment Group, Inc., 140 F.3d 463, 473 (3d Cir. 1998)
[54] In re United States Mineral Products Co., 105 Fed. Appx. 428, 430 (3d Cir. 2004)
[55] The court incorporates its opinion on that motion into this record. As noted in "In considering what is in the interests of creditors on connection with [a motion to appoint a trustee], 'a bankruptcy judge has broad discretion to take judicial notice of the entire file as to what has or has not been filed and the outcome of previous proceedings brought before the court.'" In re U.S. Mineral Products Co., 105 Fed. Appx. 428 (2004) (quoting Barry Russell, *Bankruptcy Evidence Manual* § 201.6 (2004))

the bankruptcy system and should be granted only in extraordinary circumstances.[56] For the Debtors to seek to make such a payment to an insider without full disclosure up front leads this court to conclude that Mr. Tyagi's judgment cannot be trusted when it comes to payments to Cloudeeva India. Of perhaps greater concern, is the evidence in the record in the form of bank statements showing that the Debtors made $580,114 in payments to Cloudeeva India between August 22, 2014 and September 23, 2014. A trustee needs to be in place in this case to, among other things, investigate those payments and determine if some or all of them can be recovered for the benefit of creditors.

It has been noted that "the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure [sic] that the interests of creditors are served."[57] This case cries out for an independent professional to be in place to preserve the integrity of the bankruptcy process.

## Conclusion

The motion to dismiss the case under § 1112 is denied. The court is *sua sponte* appointing a chapter 11 trustee under the authority granted by § 1112(b), based on its finding that the appointment of a trustee is in the best interests of creditors and the estate.

> */s/ Kathryn C. Ferguson*
> KATHRYN C. FERGUSON
> US Bankruptcy Judge

Dated: November 18, 2014

---

[56] In re United Am., Inc., 327 B.R. 776 (Bankr. E.D. Va. 2005); In re Kmart Corp., 359 F.3d 866 (7th Cir. 2004).
[57] In re SunCruz Casinos, LLC, 298 B.R. 821, 828 (Bankr. S.D. Fla. 2003)