HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Richard B. Honig, Esq.
Matthew E. Moloshok, Esq.
Bruce S. Etterman, Esq.
Attorneys for Richard B. Honig, Successor Chapter 11 Trustee
One Gateway Center
Newark, New Jersey 07102-5323
973.621.9020

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>CLOUDEEVA, INC.,<br><br>　　　　　　Debtor.[1] | Case No. 14-24874 (KCF)[2]<br><br>Chapter 11 Proceeding<br><br>Honorable Katheryn C. Ferguson<br><br>(Jointly Administered) |

CHAPTER 11 TRUSTEE'S MOTION, PURSUANT TO SECTIONS 105, 363, 364, 365 AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004, 6006 AND 9014 FOR ORDERS (I) (A) APPROVING BIDDING PROCEDURES; (B) APPROVING THE SELLER TERMINATION FEE AND REIMBURSEMENT AMOUNT ("STALKING HORSE PROTECTIONS"); (C) APPROVING THE FORM AND MANNER OF SALES NOTICES, AND (D) SETTING THE AUCTION AND SALE DATE ("BID PROCEDURES ORDER"); AND (II) APPROVING THE SALE OF THE PURCHASED ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES RELATED THERETO, FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES OR INTERESTS ("SALE ORDER")

　　　　　Richard B. Honig, Esq., as Successor Chapter 11 Trustee ("Trustee") for

Cloudeeva, Inc. the above-captioned debtor (the "Debtor"), by and through his undersigned

counsel, hereby files this motion, pursuant to sections 105, 363, 364, 365 and 503 of title 11 of

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Cloudeeva, Inc., a Delaware Corporation (5326) and Cloudeeva, Inc., a Florida Corporation (2227). The Debtors' corporate headquarters are located at 104 Windsor Center Drive, Suite 300, East Windsor, New Jersey 08520. Cloudeeva Florida is a holding company whose only asset is its ownership interest in Cloudeeva Delaware. All references in this motion to assets, contracts or leases, and to Debtor, unless the context otherwise requires, pertain to Cloudeeva Delaware.

[2] Jointly administered with No. 14-24875, Cloudeeva, Inc., a Florida corporation.

the United States Code (the "Bankruptcy Code") and rules 6004, 6006 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

On March 6, 2008, the Trustee as Seller entered into an Asset Purchase

Agreement, subject to the approval of this Court, and subject to higher and better offers, for

the sale of substantially all of the Debtor's assets to First Tek, Inc., a New Jersey corporation

("First Tek") (the "Buyer").  A copy of the Asset Purchase Agreement is annexed hereto as

**Exhibit 1**.

By this motion (the "Motion"), the Trustee requests the Court grant the following

relief:

1.    First, entry of a "Bid Procedures Order," substantially in the form

submitted to the Court, that will approve, among other things, the procedures for the

conduct of the auction of the Purchased Assets ("Bid Procedures"), and the conditions

under which the Seller Termination Fee and the Reimbursement Amount (each as defined

in the Purchase Agreement and as described more fully below, and collectively the

"Stalking Horse Protections") are payable.

2.    Second, after conclusion of an Auction Sale, entry of a "Sale Order,"

substantially in the form submitted to the Court, that will approve (a) a sale pursuant to

section 363 of the Bankruptcy Code of the Purchased Assets in accordance with the Asset

Purchase Agreement, free and clear of all liens, claims, encumbrances and other interests,

and (b) the assumption and assignment of certain executory contracts and unexpired

leases related to the Purchased Assets, pursuant to sections 363 and 365 of the

Bankruptcy Code, free of all liens, claims, encumbrances and other interests.

As more fully described in this motion and the Trustee's supporting Declaration,

entry of the Bid Procedures Order and consummation of a sale of the Purchased Assets

pursuant to the Sale Order are critical to the maximization of the value of the Debtor's assets and, in turn, to a recovery for the Debtor's estate.

## PRELIMINARY STATEMENT

It must be emphasized that the Debtor is in a service business. The Debtor's employees and customer relationships are a significant part of the value of the Purchased Assets. Unless and until the employees know with certainty, who their potential employer will be; and employees and customers agree to continue their relationships with the Debtor going forward, employee and customer attrition remain a significant risk to the value of the Purchased Assets. The Trustee has consulted with many of the Debtor's critical employees and customers and believes that they will broadly support the proposed sale.

The Trustee respectfully submits that the proposed sale pursuant to the Asset Purchase Agreement represents a reasonable exercise of his business judgment and is in the best interest of the Debtor's employees, creditors, and indeed all economic stakeholders of the Debtor. Accordingly, the Trustee respectfully requests entry of the Bid Procedures Order and Sale Order granting the requested relief.

In further support of this motion, the Trustee respectfully states:

## JURISDICTION

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.    The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and 503.

4.    This Motion is made pursuant to Fed.R.Bankr.P. 6004, 6006 and 9014 and the November 25, 2009 "General Order Adopting Guidelines for Sale of Estate Property" of the United States Bankruptcy Court for the District of Jersey.

3

### GENERAL BACKGROUND

5.    On July 21, 2014 (the "Petition Date"), the Debtor, a Delaware corporation, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. The Debtor managed its affairs and operated its business as a Debtor in Possession under 11 U.S.C. §§ 1107 and 1108 until the Bankruptcy Court directed the appointment of a Chapter 11 Trustee on November 18, 2014.

6.    By order entered on December 1, 2014, Stephen Gray was appointed Chapter 11 Trustee. On February 10, 2015 Mr. Gray was removed as Chapter 11 Trustee. On February 10, 2015 the Court appointed Richard B. Honig as Successor Chapter 11 Trustee.

7.    The Debtor is engaged in business as a "cloud services and technology solutions company." Predominantly it provides information technology ("IT") staffing to clients and third-party vendors in the United States and India. It grossed approximately $35 million in business during 2013 and was on track for a similar volume of business during 2014.

8.    In 2014, the Debtor encountered a number of challenges which affected its profitability attributable primarily to the actions of its feuding shareholders, Adesh Tyagi ("Tyagi") and Bartronics Asia PTE Ltd. ("Bartronics"). Each shareholder accused the other of wrongful conduct. Contentious and costly litigation ensured. The ongoing shareholder dispute and litigation had a severe adverse impact on the Debtor's business.

9.    Tyagi, who was at the time the sole director of the Debtor's parent, authorized the Debtor to file its Chapter 11 petition. This led to additional disputes between Bartronics and Tyagi as to whether the filing was appropriate and in good faith.

The litigation of these issues and mounting costs of administration, further drained the Debtor's resources.

10.     The Court ultimately found on November 18, 2014 that the bankruptcy filing was properly authorized and for the appropriate purpose of preserving the Debtor as a going concern.  The Court directed, however, the United States Trustee to appoint a Chapter 11 Trustee to oversee the Debtor's management and business affairs.

## ACTIONS BY FORMER TRUSTEE

11.     As noted above, Stephen Gray initially served as Chapter 11 Trustee. During his tenure he sought to preserve the business by gaining better control of its assets, and sought to end alleged acts of poaching and diversion of business he claimed were orchestrated by Tyagi.  (The allegations on this issue are set forth in the Complaint in the adversary proceeding Gray v. Tyagi, Adv. No.  14-02179-KFC.)

12.     Gray also began a process of evaluating whether additional capital could be obtained or costs reduced to maintain the viability of the Debtor's business.  Gray considered whether sale of the business as a going concern could maximize its value for creditors and shareholders of the business.  To this end, Gray commenced negotiations for a potential sale and sent requests for proposals to numerous entities seeking their interest in investing in or purchasing the Debtor.

## SUCCESSOR TRUSTEE

13.     Upon the Trustee's appointment as successor to Gray, he evaluated the status of the business, cash flow, profits, the availability of financing, the prospects for sale and the status of responses to the requests for proposals that the predecessor trustee had circulated.  The Trustee engaged in these efforts with assistance of CohnReznick, his financial advisors.

14.    The Trustee has determined that during the pendency of the bankruptcy case, the Debtor's business has continued to erode due to, among other things, (a) employee concerns over their continued employment; (b) customers concerns as to whether the Debtor would remain a reliable source of staffing; (c) customer confusion over whether the Debtor or Tyagi-linked businesses should be paid outstanding invoices; and (d) the high administrative costs incurred during the case.

15.    Based on an evaluation of the Debtor's cash flow needs and future prospects, the Trustee has concluded that it would be in the best interests of employees, creditors and shareholders if the Debtor's operating assets were sold promptly pursuant to Section 363 of the Bankruptcy Code, rather than awaiting submission and confirmation of a plan of reorganization. ***The sale must be done quickly, while there is still a valuable business to sell.***

16.    To that end, the Trustee, with the assistance of CohnReznick, reviewed indications of interest (including letters of intent) received before and after his appointment.

17.    Several interested parties entered into confidentiality or non-disclosure agreements ("NDAs") with the former Trustee or the Trustee; of these at least six proceeded with due diligence, had additional negotiations with the Trustee, and submitted letters of intent.

18.    From the parties submitting letters of intent, the Trustee has selected First Tek as the proposed Buyer of substantially all of the Debtor's operating assets, subject to higher or better offers.  The Trustee hereby seeks judicial approval of the Asset Purchase Agreement in the form hereto annexed between the Trustee and First Tek as Buyer, subject to higher or better offers.

## KEY TERMS OF THE ASSET PURCHASE AGREEMENT

19.    A copy of the Asset Purchase Agreement is annexed hereto as

**Exhibit 1**.  This section will summarize principal terms.  All summaries are subject to the

complete terms of the Asset Purchase Agreement.   Terms used in this Motion as defined

terms and not specifically defined in the Motion are defined in the Asset Purchase

Agreement or Bid Procedures.

20.    *Purchase Price*: Five Million Six Hundred Thousand Dollars

($5,600,000.00), all cash subject to higher or better offers.

21.    *Assets*:  Pursuant to the Asset Purchase Agreement the Trustee would

sell all of the Debtor's right, title and interest as of the Closing Date in and to substantially

all of the Debtor's operating assets.

22.    *Free and Clear*: Other than any Assumed Liabilities the sale would be

made free and clear of liens, claims, encumbrances and interests with such liens, claims,

encumbrances and interests to attach to proceeds with the extent, validity and priority they

would otherwise have under the Bankruptcy Code and applicable law, as more fully

explained below.  However, the undisputed balance due to Prestige Capitol Corporation,

the Post-Petition Factor, would be paid at Closing.

23.    *Closing*: The Trustee proposes to close the transaction no later than

May 15, 2015.

24.    *Representations and warranties*: The Asset Purchase Agreement

contains standard representations and warranties for a transaction of this nature by a

Trustee.  See Asset Purchase Agreement, Article V.

## INFORMATION CONCERNING THE PROPOSED BUYER

25.    The proposed Buyer First Tek, Inc. is a New Jersey corporation

engaged in a similar staffing business to the Debtor.  It has no known relationship to the

7

Debtor or any insiders of the Debtor, or to any professionals engaged by the Trustee. It has provided evidence of its financial ability to close this transaction.

<u>**PROPOSED NOTICE, BIDDING, AND AUCTION PROCEDURES**</u>

26.   The Trustee requests that the Court approve the following notice and other procedures set out in the Bid Procedures Order, which contains as Exhibit A details of the Bid Procedures that the Trustee has proposed. In summary the Trustee has proposed notice, bidding and the auction proceed as follows:

(a)   **Objection Deadline to Bid Procedures Order**: All objections shall be filed with the Court (electronically through the ECF system absent special circumstances) and be served so as to be received by the following persons no later than **March 31, 2015 at 4 p.m.** (the "**Sale Objection Deadline**") (i) the chambers of the Honorable Katheryn C. Ferguson, United States Bankruptcy Judge, United States Courthouse, 402 East State Street, Third Floor, Trenton, New Jersey 08608, (ii) Richard B. Honig, Trustee, Hellring Lindeman Goldstein & Siegal LLP, One Gateway Center, 8th Floor, Newark, New Jersey 07102, rbhonig@hlgslaw.com (iii) the Office of the United States Trustee for the District of New Jersey, One Newark Center, Suite 2100, Newark, New Jersey 07102 (Attn: Mitchell Hausman, mitchell.b.hausman@usdoj.govz); (iv) Brianne Orner, Esq., counsel, First Tek, Inc., 1551 S. Washington Avenue, Suite 402, Piscataway, New Jersey 08854, brianne.orner@first-tek.com attorneys for the Buyer; (v) Bernard Katz, CPA, CohnReznick Advisory Group, 333 Thornall Street, Edison, New Jersey 08837, Bernie.Katz@CohnReznick.com (Financial Advisor to the Trustee); (vi) Cynthia Romano and Daniel Politzer, Chrysalis Management LLC, 135 Crossways Parkway West, Suite 402, Woodbury NY 11797, cromano@chyrsalismgmt.com and dpolitzer@chrysalismgmt.com (Consultants to the Trustee); and (vii) Jeffrey A. Cooper, Esq. Rabinowitz, Lubetkin & Tully,

LLC, 293 Eisenhower Parkway, Suite 100, Livingston, NJ 07039, JCooper@rltlawfirm.com,
attorney for the Post-Petition Factor.

(b)    **Sale Notice**: Promptly after entry of the Bid Procedures
Order, the Trustee will serve notice of its entry and of the Auction and Sale Approval
Hearing (the "Sale Notice") by first class mail on all Notice Parties identified in "(a)" above
and also upon (i) all persons or entities (or counsel therefor) known to the Trustee to have
asserted any liens, claims or encumbrances in or upon the Debtor's assets; (ii) all federal,
state and local regulatory or taxing authorities that are reasonably known by the Trustee to
have an interest in the relief requested in the Motion; (iii) all parties known by the Trustee
Debtor to have expressed a bona fide interest in purchasing the Debtor's assets; (iv) the
Office of the United States Attorney; (v) the Internal Revenue Service; (vi) the New Jersey
Division of Taxation; (vii) the United States Attorney's office; and (viii) all entities who
have filed a notice of appearance and request for service of papers in the Debtor's case.
The form of Sale Notice is annexed as Exhibit B to the Bid Procedures Order.

(c)    **Date, Time, and Place of Auction**: The Trustee proposes
that the Auction be conducted at the offices of CohnReznick 333 Thornall Street, Edison,
New Jersey (or, if there are a larger number of bidders, at a location that shall hereafter be
designated on notice) commencing on **April 7, 2015 at 11:00 am (prevailing Eastern
Time).**  At the conclusion of the Auction, The Trustee will select the highest or best bid(s)
after consultation with the Post-Petition Factor.  The successful bidder(s) (the "Successful
Bidder") will be required to enter into definitive agreements, which shall be subject to the
approval of the Court at the Sale Approval Hearing. The Auction may be adjourned without
further notice by announcement at the Auction. Following the conclusion of the Auction,
the Trustee will promptly file a notice with the Court identifying the Successful Bidder(s),
and seeking entry of the proposed Sale Order approving the sale free and clear of liens,

claims. encumbrances and interests (any valid liens, claims, encumbrances and interests to

the attach to the proceeds with the validity, extent, and priority provided by the

Bankruptcy Code and other applicable law), provided however, the Trustee intends to pay

to the Post-Petition Factor at the time of closing the full amount of any undisputed sums

due to the Post-Petition Factor under the Post-Petition Factoring Order.

(d)     **Date, Time, and Place of the Sale Approval Hearing**: The

Debtor proposes that the Sale Approval Hearing be held in the United States Bankruptcy

Court for the District of New Jersey, 402 East State Street, Third Floor, Trenton, New

Jersey 07102, on **April 9, 2015 at 2 pm (prevailing Eastern Time)**, subject to the

Court's calendar.  The Sale Approval Hearing may be adjourned, from time to time, without

further notice to creditors or parties in interest other than by announcement of the

adjournment in open Court or on the Court's docket.

(e)     **Objection Deadline to Sale Order**: Objections to the relief

sought in the Approval Order, as applicable, shall be in writing, filed, and served so as to

be actually received by the Objection Notice Parties by **March 31, 2015 at 9 pm**

(prevailing Eastern Time). As soon as practicable after the conclusion of the Auction, but

no later than before the Sale Approval Hearing, the Trustee will file a final form of the Sale

Order as agreed upon between the Trustee and the Successful Bidder(s).

(f)     **Information Provided to Interested Parties**: The Debtor

either has provided or will provide to all parties that have either expressed an interest in

purchasing the Assets or who the Debtor believes may have an interest in purchasing the

Assets (each an "Interested Party" and, collectively, the "Interested Parties"), certain

information in connection with the proposed Sale, including, among other things, the

proposed Bid Procedures and form of Agency Agreement. Should any Interested Party

desire additional or further information, such Interested Party will be required to enter into

10

a confidentiality agreement satisfactory to the Trustee in his business judgment. Upon execution of the confidentiality agreement, the Interested Party will be given access (through a virtual data room or otherwise) to various financial data and other relevant and confidential information.

(g)     **Bid Qualification Deadline**: To allow determination of all Bidders qualifications, each Bidder's required Bid Documents showing their qualification must be received by the Trustee not later than **March 26, 2015 at 4 pm.**

(h)     **Good Faith Deposit**: Bidders will be required to submit good faith deposits (the "Good Faith Deposits") to the Trustee on or before **April 2, 2015 at 4:00 pm (prevailing Eastern Time)** (the "Bid Deadline"). Good Faith Deposits shall be equal to ten percent (10%) of the Cash purchase price of the applicable bid and not less than $500,000.  If a Successful Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Trustee will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder, and such Good Faith Deposit shall irrevocably become property of the Trustee.  If the Buyer is not the Successful bidder the Trustee will refund the Deposit within five (5) business days after the Sale Approval Hearing.

### THE BID PROCEDURES

27.     The Trustee intends to implement the Bid Procedures attached to the Bid Procedures Order as **Exhibit A**.  The Trustee reserves the right to modify such procedures as necessary or as he deems appropriate to maximize value for the Debtor's estate and creditors.  The Trustee believes that the Bid Procedures are appropriate and will maximize the recovery for the Debtor and its estate in connection with the Sale.

28.     In submitting bids, the Trustee encourages bidders to use the same Asset Purchase Agreement as has been entered by the proposed Buyer.  The Trustee

further believes that these Bid Procedures will enable him to facilitate his review, analysis, and comparison of all bids received to determine which bid(s) are in the best interests of the Debtor and its estate and creditors. However, the Trustee reserves the right to consider bids on terms different from those in the Asset Purchase Agreement.

## THE AUCTION

29.    The Trustee proposes that the auction commence on **April 7, 2015 at 11:00 am (Eastern Time) ("Auction")**. Any Qualified Bidder (as defined in the Bidding Procedures) may participate in the Auction. Bidding will continue at the Auction until the Trustee determines that he has received the highest or otherwise best bid(s) ("Successful Bid(s)"), at which point the Trustee will close the Auction.

30.    In determining which bid is the Successful Bid, Trustee intends to consider the net return after the payment of any Stalking Horse Protections described below, provided, however, that economic considerations shall not be the sole criteria upon which Trustee may base his decision; rather the Trustee reserves the right to take into account any and all factors he or his advisors believe to be relevant in an exercise of its business judgment.

## STALKING HORSE PROTECTIONS

31.    The Buyer entered into the Asset Purchase Agreement recognizing that its offer would be subjected to competing bids, and both the proposed Buyer and the Trustee believe that the Buyer's entry into the Asset Purchase Agreement established a floor price for the Purchased Assets, and may well entice other bidders to come forward with competing offers. Therefore, the Asset Purchase Agreement includes a proposed Termination Fee of $50,000 or an Reimbursement Amount of $25,000 (but not both) that would reimburse the Buyer for its reasonable risks, costs and expenses incurred in connection with its entry into the Asset Purchase Agreement and making its bid, all such

amounts subject to the approval of the Bankruptcy Court.  The Termination Fee and

Expense Reimbursement Agreement are referred to collectively as the "Stalking Horse

Protections."  The Stalking Horse Protections would only be payable to the proposed Buyer

in the event that  the proposed Buyer is not the Successful Bidder at the Auction and a

transaction closes with another Successful Bidder, and the Court shall have approved them

as to amount and payment.

      32.    The Proposed Buyer's offer is a Stalking Horse Bid and is subject to

higher or better offers.

## APPLICABLE AUTHORITY

### Sale of The Debtor's Assets Is Warranted Under Section 363 of the Bankruptcy Code

      33.    Ample authority exists for the approval of the proposed sale of the

Debtor's assets.  Section 363 of the Bankruptcy Code authorizes a trustee to use or sell

assets of the estate other than in the ordinary course of business, free and clear of liens,

claims and encumbrances.  Section 363(b)(1) provides, in relevant part, "The trustee, after

notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate . . ."  Sales may be by private sale or public auction. Fed. R. Bankr.

P. 6004(f)(1). In determining whether a proposed sale under Section 363(b)(1) of the

Bankruptcy Code is appropriate, courts examine whether the Trustee has exercised sound

business judgment in proposing the sale in question, whether the sale is in the best

interest of creditors, and is entered into in good faith. E.g., In re Abbotts Dairies of Pa.,

Inc., 788 F.2d 143 (3rd Cir. 1986); Comm. of Equity Sec. Holders v. Lionel Corp. (In re

Lionel Corp.), 772 F.2d 1063, 1071 (2d Cir. 1983); In re Lionel Corp., 722 F.2d 1062, 1071

(2nd Cir. 1983).  See also Stephens Indus., Inc. v. McClung, 789 F.2d 386, 388-390 (6th

Cir. 1986); In re Del. & Hudson Ry. Co., 124 B.R. 169, 175-176 (D.Del. 1991); In re Indus.

Valley Refrig. & Air Cond. Supplies, 77 B.R. 15, 21 (Bankr. E.D.Pa. 1987).

34.    If the court is satisfied that the trustee has a sound business justification for seeking to make a sale, then the court must then decide whether (i) the trustee provided interested parties with adequate and reasonable notice, (ii) whether the sale price is fair and reasonable, and (iii) whether the Buyer is proceeding in good faith. See, e.g., In re Triangle Transp., Inc., 419 B.R. 603 (Bankr. D.N.J. 2009)(applying Abbotts Dairies factors and approving sale after shortened notice periods finding prevailing bid presented in good faith at a fair price).

35.    The previously described facts and circumstances show sound business justifications for selling the Debtor's assets.  As described earlier, an orderly, expeditious sale of Debtor's assets is critical to preserving the value of the business, and in turn effectuating a recovery for the Debtor's Estate and its stakeholders.  The Debtor has been facing a loss of employees and customers directly related to the uncertainty of its prospects in bankruptcy.  Providing cohesion and the assurance that the business could be transferred as a going concern has been beneficial to maintaining employee confidence and keeping the business going.  Moreover, if the business is not sold, it is likely that the Trustee will be forced to terminate business operations due to ongoing losses.  That is why the Trustee seeks to close the transaction within the proposed expedited timeframes.  In his view, after consultation with his advisors, the proposal site and bidding procedures present the best method to preserve and maximize the value of the Debtor's estate.

36.    The notice of the Bid Deadline that the Trustee proposes to provide, as set forth in the Bid Procedures Order will be adequate and reasonable.  Because of the prior marketing effort and the opportunities of potentially interested Buyers to review the Debtor's assets, liabilities and operations, and, to consider making a proposal, there is already a potential for competitive bidding.  Moreover, marketing efforts can continue during the lead up to the Auction.

37.    The Trustee believes that the Purchase Price under the Asset Purchase Agreement is fair and reasonable.  Moreover, through the Bid Procedures, the Auction and the sales approval hearing, the Trustee believes the Court as well will have the assurance that the Successful Bidder will have presented the highest or best offer, and that the sale has resulted in a good faith reasonably equivalent value for the assets transferred.

## SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS

38.    In the interest of attracting the best offers, the sale of the Purchased Assets should be free and clear of any and all liens, claims, encumbrances and interests in accordance with section 363(f) of the Bankruptcy Code, with any such valid liens, claims and encumbrances attaching to the proceeds of the Sale with the same validity, extent, and priority as they would have under the Bankruptcy Code and applicable law.

39.    Pursuant to section 363(f) of the Bankruptcy Code, a trustee may sell property of the estate "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(a)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(b)    such entity consents;

(c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(d)    such interest is in bona fide dispute; or

(e)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

40.    With respect to any party asserting a lien, claim, encumbrance or interest against the assets, the Trustee anticipates that he will be able to satisfy one or more of the conditions set forth in section 363(f), as the Post-Petition Factor is the only

15

known prepetition or postpetition secured lender and the Post-Petition Factor will be paid

in full from the proceeds at the Closing as to any amounts not in bona fide dispute.

**THE SUCCESSFUL OFFEROR SHOULD BE AFFORDED ALL PROTECTIONS
UNDER SECTION 363(M) AS A GOOD FAITH BUYER**

      41.    Section 363(m) of the Bankruptcy Code protects a good-faith

purchaser's interest in property purchased from a trustee notwithstanding that the sale

conducted under section 363(b) is later reversed or modified on appeal. Specifically,

section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)]
> ...does not affect the validity of a sale...to an entity that purchased such property
> in good faith, whether or not such entity knew of the pendency of the appeal,
> unless such authorization and such sale were stayed pending appeal.

11 U.S.C. § 363(m).   Section 363(m) promotes a "policy of not only affording finality to the

judgment of the bankruptcy court, but particularly to give finality to those orders and

judgments upon which third parties rely." In re Abbotts Dairies of Penn., Inc., supra, 788 F.2d

143 at 147). See also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section

363(m)...provides that good faith transfers of property will not be affected by the reversal or

modification on appeal of an unstayed order, whether or not the transferee knew of the

pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990)

("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a

sale on appeal unless there is a stay pending appeal").

      42.    The selection of the Successful Bidder will be the product of arms-

length, good faith negotiations in an anticipated competitive purchasing process. The

Debtor intends to request at the Sale Approval Hearing a finding that the Successful Bidder

is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy

Code.

16

## THE STALKING HORSE PROTECTIONS SHOULD BE APPROVED

43.    In connection with the Asset Sale, the Trustee is seeking authorization to pay (i) the Termination Fee and (ii) the Expense Reimbursement described herein.

44.    Bidding incentives encourage a potential purchaser to invest the requisite time, money and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.

45.    The United States Court of Appeals for the Third Circuit established standards for determining the appropriateness of expense reimbursement and other financial protections in the bankruptcy context in Calpine Corp. v. O'Brien Envtl Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527 (3d Cir. 1999).  In O'Brien, the Third Circuit identified at least two instances in which an award of a break-up fee or expense reimbursement may benefit the estate. First, a break-up fee or expense reimbursement may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." O'Brien, 181 F.3d at 537. Second, the availability of break-up fees and expenses induces a bidder to research the value of the debtor and convert the value to a dollar figure on which other bidders can rely, thereby providing a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth. Id.  The Third Circuit held that although payment of expenses and break-up fees are measured against a business judgment standard in non-bankruptcy transactions, the administrative expense provisions in section 503(b) of the Bankruptcy Code govern in the bankruptcy context.  Therefore, to be approved, the debtor must demonstrate that the expenses to be reimbursed provide a benefit to its estate. Id. at 533.

46.    In O'Brien, the court reviewed nine factors that the lower court treated as relevant in deciding whether to award a break-up fee:

(a)    the presence of self-dealing or manipulation in negotiating the break-up fee;

(b)    whether the fee harms, rather than encourages, bidding;

(c)    the reasonableness of the break-up fee relative to the purchase price;

(d)    whether the unsuccessful bidder placed the estate property in a "sales configuration, mode" to attract other bidders to the auction;

(e)    the ability of the request for a break-up fee to serve to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders;

(f)    the correlation of the fee to a maximum of value of the debtor' estate;

(g)    whether principal secured creditors and creditors committees support the break-up fee;

(h)    the benefits of the safeguards to the debtori|s estate; and

(i)    adverse impact of the break-up on unsecured creditors, where such creditors oppose the break-up fee.

See O'Brien, 181 F.3d at 536.

47.    Thus it is "permissible to offer a break-up fee and reimbursement for expenses to induce an initial bid, provided the allowance of the fee does not give an advantage to a favored purchaser over other bidders by increasing the cost of acquisition." In re Reliant Energy Channelview LP, 594 F.3d 200, 206 (3d Cir. Del. 2010).

48.     The Trustee submits that the Stalking Horse Protections will enable the Debtor to secure an adequate sale price floor for the Assets and, thus, require that competing bids be materially higher or otherwise better than the Stalking Horse Agreement -- a clear benefit to the Debtor's estate.  Additionally because they are sufficiently small relative to the purchase price, they would not give an advantage to the Buyer making the Stalking Horse Bid.

### THE BID PROCEDURES ARE REASONABLE AND APPROPRIATE

49.     The Trustee believes that the Bid Procedures will ensure that the bidding process and the Auction are fair and reasonable and will yield the maximum value for Debtor's estate and creditors. The Trustee requests that the Court approve the Bid Procedures, including the dates established thereby for the Auction and the Sale Approval Hearing.

### THE COURT SHOULD WAIVE OR REDUCE THE PERIODS REQUIRED BY RULES 6004(H) AND 6006(D) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

50.     Pursuant to Interim Rule 6004(h) of the Bankruptcy Rules, unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for 10 days after entry of the order. Fed. R. Bankr. P. 6004(h).

51.     The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Similarly, Bankruptcy Rule 6006(d) stays all orders authorizing a debtor to assign an executory contract or unexpired lease pursuant to section 365(f) of the Bankruptcy Code for 10 days, unless the court orders otherwise. Fed. R. Bankr. P. 6006(d).

52.    However, good cause exists to shorten the time.  The Debtor is a party to the Post-Petition Factoring Order and a related factoring arrangement and, as noted, the Post-Petition Factor will need to be paid at the closing in order for the Accounts Receivable (a substantial portion of the Purchased Assets) to be transferred to the Buyer; in addition, delay would result in costly additional interest and possible adjustments, and otherwise prejudice the Debtor and the Post-Petition Factor. Consequently, the Trustee requests that any order approving the Sale Motion should be effective immediately by providing that the 10-day stay under Bankruptcy Rules 6004(h) and 6006(d) is waived.

## WAIVER OF MEMORANDUM OF LAW

53.    Because the legal points and authorities upon which this Motion relies are incorporated herein and do not raise any novel issues of law, the Debtor respectfully requests that the requirement of the service and filing of a separate memorandum of law pursuant to Local Rule 9013-2 be deemed waived.

## NOTICES

54.    The Trustee has been appointed as the fiduciary for the Debtor's estate.  No examiner, or creditors committee has been appointed.  The Trustee is serving notice of this Motion and the hearing to consider entry of the Bid Procedures Order on: (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Debtor's twenty largest unsecured creditors; (iii) counsel for the Post-Petition Factor; (iv) all other entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the assets that the Trustee seeks to sell, (v) those parties who have filed a notice of appearance and request for service of pleadings in this Chapter 11 Case pursuant to Bankruptcy Rule 2002, and (vi) those parties who have expressed a potential interest in bidding. The Trustee submits that no other or further notice need be provided.

## **NO PRIOR REQUEST**

55.     No previous motion for the relief sought herein has been made to this or to any other court.

WHEREFORE, the Trustee respectfully requests that the Court (a) enter the Bid Procedures Order, (b) following the Sale Approval Hearing, enter the Sale Order, and (c) grant such other relief as is just.

HELLRING LINDEMAN GOLDSTEIN & SIEGAL LLP
Attorneys for Richard B. Honig, Successor
Chapter 11 Trustee for Cloudeeva, Inc.

By: _____
RICHARD B. HONIG
MATTHEW E. MOLOSHOK
BRUCE S. ETTERMAN
Members of the Firm

Dated:     March  9 , 2015

21

12859